1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  FRANK J. JANECEK, JR. (156306)
   CHRISTOPHER COLLINS (189093)
3  655 West Broadway, Suite 1900
   San Diego, CA  92101
4  Telephone:  619/231-1058
   619/231-7423 (fax)
5  frankj@rgrdlaw.com
   chrisc@rgrdlaw.com
6
   COHN LIFLAND PEARLMAN
7      HERRMANN & KNOPF LLP
   PETER S. PEARLMAN
8  Park 80 Plaza West-One
   Saddle Brook, NJ  07663
9  Telephone:  201/845-9600
   201/845-9423 (fax)
10
   LYNCH LAW FIRM, P.C.                    ZIMMERMAN REED, P.L.L.P.
11 PAUL I. PERKINS                         J. GORDON RUDD, JR.
   45 Eisenhower Drive, Suite 300          DAVID M. CIALKOWSKI
12 Paramus, NJ  07652                      651 Nicollet Mall, Suite 501
   Telephone: 800/656-9529                 Minneapolis, MN  55402
13 888/271-9726 (fax)                      Telephone: 612/341-0400
                                           612/341-0844 (fax)
14 Attorneys for Plaintiffs

15              UNITED STATES DISTRICT COURT

16             SOUTHERN DISTRICT OF CALIFORNIA

17 AMANDA HERMAN d/b/a CREATING        )  Lead Case No. 3:10-cv-00195-JAH-AJB
   WELLNESS CHIROPRACTIC CENTER, et    )
18 al., Individually and on Behalf of All Others )  CLASS ACTION
   Similarly Situated,                 )
19                                     )  PLAINTIFFS' MEMORANDUM OF
                          Plaintiffs,  )  POINTS AND AUTHORITIES IN
20                                     )  OPPOSITION TO DEFENDANT'S MOTION
            vs.                        )  TO TRANSFER
21                                     )
   YELLOWPAGES.COM, LLC,               )  DATE:      July 19, 2010
22                                     )  TIME:      2:30 p.m.
                          Defendants.  )  COURTROOM:  11
23 _____ )

24

25

26

27

28

571057_1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     STATEMENT OF FACTS ...............................................................................2

III.    ARGUMENT/POINTS AND AUTHORITY ....................................................6

        A.      The First-To-File Rule Is Not Applicable and Should Not Be Applied to
                This Action................................................................................................6

        B.      Defendant Has Not Met the Heavy Burden Necessary for a Transfer Under
                28 U.S.C. §1404(a) ..................................................................................9

IV.     CONCLUSION................................................................................................16

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Accentra, Inc. v. Staples, Inc.*,
  2008 WL 74000627 (C.D. Cal. Feb. 27, 2008),
  *reconsideration denied*, 2008 WL 7400628 (C.D. Cal. Apr. 23, 2008) .................................15

5

6

*Allstar Marketing Grp., LLC v. Your Store Online, LLC*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) .........................................................................9, 10

7

8

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ....................................................................................6, 7

9

*American Bankers Mortg. Corp. v. Federal Home Loan Mortg. Corp.*,
  75 F.3d 1401 (9th Cir. 1996) .........................................................................................13

10

11

*Antonaccio v. Board of Educ. of Arlington Central Sch. Dist.*,
  281 F. Supp. 2d 710 (S.D.N.Y. 2003)................................................................................7

12

13

*Attachmate Corp. v. Public Health Trust*,
  686 F. Supp. 2d 1140 (W.D. Wash. 2010)........................................................................15

14

*Barapind v. Reno*,
  72 F. Supp. 2d 1132 (E.D. Cal. 1999)................................................................................6

15

16

*Bhari Information Tech. Sys., Ltd. v. Allied Boston Bank Inc.*,
  2005 WL 3481473 (N.D. Cal. Dec. 20, 2005)..................................................................13

17

18

*Brackett v. Hilton Hotels Corp.*,
  619 F. Supp. 2d 810 (N.D. Cal. 2008) ......................................................................11, 16

19

*Byerson v. Equifax Info. Serv., LLC*,
  467 F. Supp. 2d 627 (E.D. Va. 2006) ...............................................................................11

20

21

*Carnival Cruise Lines, Inc. v. Shute*
  499 U.S. 585 (1991)...............................................................................12, 13, 15, 16

22

23

*Cascade Promotion Corp. v. AMA Sys., LLC*,
  2007 WL 1574544 (N.D. Cal. May 30, 2007) ..................................................................14

24

*Cedars-Sinai Med'l Ctr. v. Shalala*,
  125 F.3d 765 (9th Cir. 1997) ...........................................................................................7

25

26

*Chateau Des Charmes Wines Ltd. v. Sabate USA Inc.*,
  328 F.3d 528 (9th Cir. 2003) ...........................................................................................13

27

28

1

2                                                                        **Page**

3   *Church of Scientology v. United States, Dep't of the Army*,
        611 F.2d 738 (9th Cir. 1979) ...................................................................7
4

5   *Cochran v. NYP Holdings, Inc.*,
        58 F. Supp. 2d. 1113 (C.D. Cal. 1998)
6       *aff'd*, 210 F.3d 1036 (2000) ...................................................................9

7   *Commodity Futures Trading Comm'n v. Savage*,
        611 F.2d 270 (9th Cir. 1979) ...................................................................9
8

9   *Decker Coal Co. v. Commonwealth Edison Co.*,
        805 F.2d 834 (9th Cir. 1986) ..........................................................9, 11, 16

10  *Deiro v. American Airlines, Inc.*,
        816 F.2d 1360 (9th Cir. 1987) ...............................................................13
11

12  *District Council 37 Health & Sec. Plan v. McKesson Corp.*,
        2006 WL 1305235 (N.D. Cal. May 11, 2006) ...........................................7
13

14  *E & J Gallo Winery v. F & P S.p.A*,
        899 F. Supp. 465 (E.D. Cal. 1994) ...........................................................9

15  *Effron v. Sun Line Cruises, Inc.*,
        67 F.3d 7 (2d Cir. 1995) ........................................................................13
16

17  *Epps v. 1.I.L, Inc.*,
        2007 WL 4463588 (E.D. Pa. Dec. 19, 2007) .........................................13
18

19  *Gootnick v. Lighter*,
        2005 WL 3079000 (N.D. Cal. Nov. 16, 2005) ........................................15

20  *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*,
        179 F.R.D. 264 (C.D. Cal. 1998) ...........................................................7, 8
21

22  *Hua v. MEMC Elec. Materials, Inc.*,
        2009 WL 1363545 (N.D. Cal. May 14, 2009) .........................................13
23

24  *Jaramillo v. DineEquity, Inc.*,
        664 F. Supp. 2d 908 (N.D. Ill. 2009) ......................................................11

25  *Jolly v. Purdue Pharma L.P.*,
        2005 WL 2439197 (S.D. Cal. Sept. 28, 2005) ........................................10
26

27  *Jones v. GNC Franchising, Inc.*,
        211 F.3d 495 (9th Cir. 2000) .............................................................10, 12

28

**Page**

*Kowalski v. Yellowpages.com,*
 No. 09-cv-2382 (PGS) (S.D. Cal.) ............................................................... *passim*

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
 858 F.2d 509 (9th Cir. 1988) ........................................................................15

*O'Brien v. Okemo Mountain, Inc.,*
 17 F. Supp. 2d 98 (D. Conn. 1998) ...............................................................13

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
 678 F.2d 93 (9th Cir. 1982) ........................................................................6, 7

*Peak v. Green Tree Financial Servicing Corp.,*
 2000 WL 973685 (N.D. Cal. July 7, 2000)......................................................7

*Phillips v. Audio Active Ltd.,*
 494 F.3d 378 (2d Cir. 2007)..........................................................................15

*Prime Equity Holdings, Inc. v. Yellowpages.com, LLC and AT&T Inc.,*
 No. 10-CV-0798 BTM WVG (S.D. Cal.) ......................................................... *passim*

*Rowsby v. Gulf Stream Coach, Inc.,*
 2009 WL 1154130 (C.D. Cal. Feb. 9, 2009).................................................14

*Sarmiento v. BMG Entertainment,*
 326 F. Supp. 2d 1108 (C.D. Cal. 2003) ........................................................13

*Scherk v. Alberto-Culver Co.,*
 417 U.S. 506 (1974)......................................................................................14

*Securities Investor Protection Corp. v. Vigman,*
 764 F.2d 1309 (9th Cir. 1985) ........................................................................9

*Shroyer v. New Cingular Wireless Services, Inc.,*
 498 F.3d 976 (9th Cir. 2007) ........................................................................13

*Stewart v. Org. v. Ricoh Corp.,*
 487 U.S. 22 (1988)........................................................................................12

*STX, Inc. v. Trik Stik, Inc.,*
 708 F. Supp. 1551 (N.D. Cal. 1988) ...............................................................9

*Van Slyke v. Capital One Bank,*
 503 F. Supp. 2d 1353 (N.D. Cal. 2007) ........................................................12

1
2                                                                                    **Page**

3   *Viper Networks, Inc. v. Rates Techn., Inc.*,
4        2009 WL 4261167 (S.D. Cal. Nov. 23, 2009) ....................................................10, 11

5   *Ward v. Follett Corp.*,
         158 F.R.D. 645 (N.D. Cal. 1994).....................................................................8
6

**STATUTES, RULES AND REGULATIONS**
7

8   United States Code
         28 U.S.C. §1404(a) .........................................................................2, 9, 12
9
    Federal Rules of Civil Procedure
10       23(b)(1) ................................................................................................8
         23(b)(2) ................................................................................................8
11       23(b)(3) ................................................................................................9

12  California Business and Professions Code
         §17200...................................................................................................1
13       §17500...................................................................................................1

14  New Jersey Statutes
         §56:8-1 ...........................................................................................1, 5, 7
15

16  United States District Court, District of New Jersey Local Rules
         72.1(c)(1)(A) and (C)..............................................................................5
17

**SECONDARY AUTHORITIES**
18

19  15 Wright, Miller & Cooper, Federal Practice and
         Procedure: Jurisdiction 2d §3847.............................................................11
20
21
22
23
24
25
26
27
28

# I.      INTRODUCTION

Plaintiffs, Amanda Herman d/b/a Creating Wellness Chiropractic Center, Cynthia Gibson d/b/a Telephone Jacks, Lisa Feeley d/b/a All Bay Locksmith and Jeffrey P. Ordway d/b/a Earthwerks Unlimited (collectively, "Plaintiffs"), submit this memorandum of law in opposition to the motion of Defendant Yellowpages.com LLC ("Defendant") to transfer this action to the Southern District of New York or, in the alternative, to the District of New Jersey.

As is clear from Defendant's papers, its ultimate aim is to move this action ("*Herman*") and another action pending in the District of New Jersey, *Kowalski v. Yellowpages.com*, No. 09-cv-2382 (PGS) ("*Kowalski*"), to the Southern District of New York.  And that effort rises – and ultimately falls – on the enforceability of a forum selection clause to which Defendant seeks to bind its customers, even though they are not shown or made aware of the existence of that clause (or many other terms of the agreement to which Defendant seeks to bind them) until after Defendant contends they have committed to, and are bound by the terms of their agreement with Defendant.  Thus, that effort must fail.

In support of this motion, Defendant relies initially upon the first to file rule, contending that this action should be transferred to the District of New Jersey to be consolidated with *Kowalski* (which, of course, they wish not to defend in that district at all, but in the Southern District of New York).  However, the first-to-file doctrine does not support removal of this action to the District of New Jersey because, among other things, the parties and claims in this action are not "substantially similar to" those in ***Kowalski as that term is used for purposes of that doctrine***.

*Kowalski*, which originally was filed in the Superior Court of New Jersey, is brought under the New Jersey Consumer Fraud Act, N.J. Stat. §56:8-1, *et. seq.* ("NJCFA"), on behalf of a class of persons and entities in the State of New Jersey only.  On the other hand, *Herman* is brought on behalf of all persons and entities throughout the United States under the California Business and Professions Code §§17200 and 17500, *et seq.* ("CBPC").  *Herman* is properly filed in California as Defendant's headquarters and principal place of business are located here and, thus, much of the wrongful conduct complained of in this action emanated from California.  Also, both plaintiffs Cynthia Gibson and Lisa Feeley reside in California.  Further, another putative nationwide class

1    action arising out of much of the same underlying conduct, *Prime Equity Holdings, Inc. v.*

2    *Yellowpages.com, LLC and AT&T Inc.*, No. 10-CV-0798 BTM WVG. ("*Prime Equity*"), is pending

3    in this district and has been consolidated with *Herman*.  (Document 30).

4          In the alternative, Defendant seeks to transfer this action to the Southern District of New

5    York (or to the District of New Jersey as a temporary stop-over on the way), relying principally upon

6    28 U.S.C. §1404(a).  However, Defendant cannot meet the heavy burden necessary to transfer this

7    action under that statute.  As neither the first to file rule, nor a §1404(a) transfer, are applicable,

8    Defendant's motion should be denied.

9    **II.    STATEMENT OF FACTS**

10          This is a putative nationwide class action brought by four customers of Defendant.  (See

11    Plaintiffs' Class Action Complaint ("CAC"), a true copy of which is annexed at Exhibit "A" to the

12    Declaration of Peter S. Pearlman ("Pearlman Dec") submitted herewith).  Plaintiffs assert causes of

13    action under California statutory and common law for unlawful, deceptive, fraudulent and unfair

14    business practices inflicted upon them by Defendant. (CAC¶146-147, 153).  The putative class (the

15    "Class") is comprised of all persons or entities in the United States that allegedly contracted with

16    Defendant for advertising services from and after May 1, 2005.  (CAC ¶31).

17          Defendant, a wholly owned subsidiary of AT&T, Inc. ("AT&T"), operates an online

18    advertising service.  (CAC ¶2).  Defendant is in the business of soliciting from, and selling

19    advertising to, consumers and displaying that advertising on the internet for the general public to

20    search.  (CAC ¶3).  Defendant states that it provides services to its customers, including Plaintiffs,

21    by driving internet traffic to their Yellowpages.com ad and/or website.  (CAC ¶3).

22          Each of Defendant's salespeople is trained to "hard-sell" Defendant's products.  (CAC¶24).

23    Defendant solicits prospective customers to purchase its advertising either in person by a salesperson

24    who comes to the customer's business (a "premise sale"), or over the telephone.   (CAC ¶4).

25    Regardless of the method of solicitation, customers are subjected to the same misrepresentations,

26    omissions and deceptive sales practices.  (CAC ¶5).

27          Defendant's salespeople work from a uniform scripted sales presentation (the "Script").

28    (CAC ¶5).  As part of their intense training, all salespeople must memorize the Script and employ a

1    particular methodology when selling Defendant's products.  (CAC ¶8).  The methods utilized by the

2    salespeople, are inherently misleading, fraudulent and deceptive; consequently, upon conclusion of

3    the salesperson's presentation, customers believe they are going to receive particular benefits on

4    certain terms when there is no reasonable basis for Defendant to assert those benefits will be

5    achieved, and the terms are materially different than what is represented.  (CAC ¶¶8-9).

6        Among other things, Defendant represents that:  it provides the number one online yellow

7    pages search engine and, thus, any customer who purchases a listing within the Yellowpages.com

8    site automatically receives a high level of exposure   (CAC ¶6(a));   Defendant has developed

9    "partnerships" with major online search engines like Google.com, Yahoo.com, MSN.com, and

10   others and, as a result, customers will be featured prominently in the results of searches run on those

11   search engines   (CAC ¶6(a));   and because of the "partnerships" it is cheaper to advertise with

12   Yellowpages.com than directly with those major search engines.  Defendant features several types of

13   advertising products in which the customers can also enroll, including, but not limited to: the

14   YPClicks! Program or Yellowpages.com Guaranteed Clicks Program; the Click to Call Program; and

15   the Purchase of a Tile Position.[1]  (CAC ¶6(b)).

16       The salespeople represent that by advertising with Defendant customers will benefit from

17   featured prominence in major online search engines.  (CAC ¶7(a)).  However, the customers' ads are

18   not featured as represented and Defendant has no reasonable basis to believe they will be.  (CAC

19   ¶7(a)).  Additionally, Defendant's representations that it has "partnerships" or "strategic alliances"

20   with major search engines are false.  (CAC ¶7(b)).

21       During the solicitations, the customers are shown documents which purport to display the

22   number of searches conducted on Yellowpages.com for the customer's particular product or service

23   in the customer's geographic area.  (CAC ¶35).  However, the data displayed is derived not from

24   Yellowpages.com alone but includes searches on other major search engines such as Google.com

25

26

27   [1]    These products are discussed in detail in Plaintiffs' Class Action Complaint.

28

1    and Yahoo.com.  (CAC ¶36).  Consequently, the number of searches which the customer is shown,

2    and on which s/he is induced to make a purchasing decision, is materially overstated.  (CAC. ¶37).

3         After Defendant fraudulently induces the customer to purchase advertising, Defendant

4    entices the customer to "enter into" a contract while withholding many of its material terms from the

5    customer.  Those terms are found in a discrete document known as the "Terms and Conditions"

6    which is neither shown nor provided to the customer until after s/he has signed an electronic order

7    form on which the Terms and Conditions is not visible (in the case of a premise sale) or recorded his

8    or her oral assent to purchase during the taped telephone conversation (in the case of a telephone

9    sale).  (CAC ¶7(c)).  Defendant uses this alleged assent to assert that the customer is bound to a

10   contract even though the Terms and Conditions subsequently disclosed to customers differ

11   materially from, and contain material terms in addition to, that which the customer was shown and/or

12   told.  (CAC ¶7(c)).  Those additional terms and conditions include the never previously disclosed

13   forum selection clause.  (CAC ¶56(i)).

14        A customer who realizes the Terms and Conditions differ from what has been represented

15   and/or is not receiving the services represented by Defendant is not permitted to cancel the contract.

16   (CAC ¶9).  When the salesperson and manager are unable to deflect the customer's complaints and

17   the customer declines to pay, s/he is subjected to an aggressive collections process to enforce

18   payment.  (CAC ¶9).

19        The claims of each of the named Plaintiffs demonstrate Defendant's failure to provide them

20   with notice of and, of course, to obtain their agreement to the forum selection clause.   Amanda

21   Herman signed an electronic order at approximately 1:00 p.m. on September 17, 2008.  (CAC ¶78).

22   There were no terms and conditions visible on the screen when Dr. Herman signed, and she was not

23   given the Terms and Conditions to review prior to doing so.  (CAC ¶¶78-79).  The circumstances of

24   the other plaintiffs were similar. Cynthia Gibson agreed to purchase over the telephone on January 9,

25   2009. (CAC ¶¶87, 92).  She never received the Terms and Conditions prior to doing so.  (CAC ¶94).

26   Plaintiff Lisa Feeley signed an electronic order in April 2009.  (CAC ¶¶97, 101).  The Terms and

27   Conditions were never presented to Ms. Feeley prior to doing so.  (CAC ¶102).  Plaintiff Jeffrey

28

1   Ordway agreed to purchase during a telephone call in April 2008.  (CAC ¶¶108, 113-115).  Mr.

2   Ordway did not receive a copy of the Terms and Conditions until several weeks later.  (CAC ¶16).

3          California is the logical situs for this nationwide class action:  Plaintiffs Cynthia Gibson and

4   Lisa Feeley both reside in California; Defendant's headquarters and principal place of business are

5   located in California and, thus, much of the wrongful conduct complained of in this action emanated

6   from this state; and, accordingly, their conduct is subject to, and this action has been filed under

7   California law.  While *Kowalski* was filed first, it is not inclusive of this action.[2]  *Kowalski* is

8   brought on behalf of residents of the State of New Jersey only, under the New Jersey Consumer

9   Fraud Act, N.J. Stat. §56:8-1, *et seq.*  (See Exhibit "B" to Defendant's Moving Papers).[3]

10         Also, *Prime Equity,* is a subset of this action, whose plaintiff seeks to represent all persons

11  who purchased a particular program offered by Defendant: YP Clicks!.  (See *Prime Equity* Class

12  Action Complaint, a true copy of which is annexed as Exhibit "C" to the Pearlman Dec).  As such,

13  *Prime Equity has been* consolidated for all purposes with this action.

14         *Prime Equity* includes an additional defendant, AT&T, the parent company of

15  Yellowpages.com.  *Id.*  This raises an additional issue.  AT&T was named as a defendant in the

16  original *Kowalski* complaint.  (See Exhibit "A" to Defendant's Moving Papers).  AT&T moved to

17  dismiss that action in New Jersey, contending that state lacked personal jurisdiction over it for

18  purposes of that action (see AT&T's Memorandum of Law in Support of Motion to Dismiss

19  _____

20  [2]      While Defendant is correct that Plaintiffs did not file a Notice of Related Cases with their
    complaint, and Plaintiffs accept Defendant's criticism for not doing so, under the circumstances it
21  deserves note that Defendant, a party to *Kowalski* as well, also failed to file a Notice of Related
    Cases with its answer, filing one only at the same time as its motion to transfer.  This was an
22  oversight on Plaintiffs' part and, presumably, on Defendant's as well.

23  [3]      Defendant has filed a motion in the District of New Jersey to transfer *Kowalski* to the
    Southern District of New York.  That motion is not scheduled to be heard until July 27, 2010 and of
24  course will not be decided until on or after that date.  As the motion has been referred to the
    magistrate judge, any decision likely will be appealed to the district judge, further delaying any final
25  resolution as such order will not become effective until after the appeal is decided. *See* Local Civil
    Rule 72.1(c)(1)(A) and (C) of the United States District Court For the District of New Jersey
26  (Pearlman Dec Exhibit "B") Thus,  Plaintiffs oppose Defendant's request that this Court wait until
    after the *Kowalski* court rules to decide this motion.  Discovery should commence in this more
27  inclusive action as soon as possible, and this Court should not continue to defer it.

28

1    Kowalski Complaint, a true copy of which is annexed as Exhibit "D" to the Pearlman Dec).  In

2    response to that motion, Kowalski filed an amended complaint eliminating AT&T as a defendant

3    (see Exhibit "B" to Defendant's Moving Papers).  As AT&T has successfully taken the position that

4    it cannot be sued in New Jersey, the California actions cannot be transferred to that district.  The two

5    putative nationwide class actions belong in California and should not be transferred to a district in

6    which one of the defendants already has successfully maintained it cannot be sued.

7    **III.    ARGUMENT/POINTS AND AUTHORITY**

8        **A.    The First-To-File Rule Is Not Applicable and Should Not Be Applied
             to This Action**

9        In the Ninth Circuit first-to-file is a discretionary rule that "may be invoked 'when a

10   complaint involving the same parties and issues has already been filed in another district.'"  *Alltrade,*

11   *Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Pacesetter Sys., Inc. v.*

12   *Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)).[4]  If "the issues or parties involved in the two suits

13   [a]re not the same, adherence to the first-to-file rule would be reversible error for it would constitute

14   a misapplication of the law."  *Alltrade*, 946 F.2d at 625 n.13 (citing *Pacesetter*, 678 F.2d at

15   96)(emphasis in original); *see also Barapind v. Reno*, 72 F. Supp. 2d 1132, 1146 (E.D. Cal.

16   1999)("The rule does not apply where different parties or issues are involved in the two actions").

17       In the cases at bar, while certainly many of the underlying facts comprising Defendant's

18   wrongful course of conduct are the same, and discovery in both cases will overlap substantially -

19   indeed, discovery of Defendant and third parties in *Herman* likely will subsume substantially that

20   discovery in *Kowalski* and *Prime Equity* and such discovery certainly should be coordinated -

21   neither the parties, nor the issues are the same.  The only common party in this action and *Kowalski*

22   is Yellowpage.com.  The named plaintiffs in *Kowalski* are different as are the classes they seek to

23   represent.  *Kowalski* asserts a class of consumers who purchased in New Jersey only, while *Herman*

24

25

26   _____

27   [4]        Here and throughout this brief, unless stated to the contrary, all internal quotations and
     citations are omitted and all emphasis is added.

28

1    and *Prime Equity* assert nationwide classes.[5]  And of course AT&T is not – and cannot be - a party

2    in *Kowalski*.

3          The causes of action also are different.  *Kowalski* is brought under the NJCFA; whereas

4    *Herman* and *Prime Equity* both are brought under the CPBC and *Herman* also asserts common law

5    claims for fraud, negligent misrepresentation and unjust enrichment.  When the "issues are distinct,

6    the requirement of identity of the issues is not met, and the first-to-file rule is inapplicable." *Cedars-*

7    *Sinai Med'l Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) (affirming the district court's refusal

8    to apply the first-to-file rule where the issues were different).  As neither the parties, nor the issues,

9    are the same, the first-to-file rule is not applicable.

10          Moreover, even if the rule could be applied here, the "most basic aspect of the first-to-file

11    rule is that it is discretionary…." *Alltrade*, 946 F.2d at 628.  The rule "is not a rigid or inflexible rule

12    to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial

13    administration." *Pacesetter*, 678 F.2d at 95.  "'Circumstances and modern judicial reality'" may

14    dictate that a court dispense with the rule.  *Id.* (quoting *Church of Scientology v. United States, Dep't*

15    *of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).  Thus, "district court judges can, in the exercise of

16    their discretion, dispense with the first-filed principle for reasons of equity." *Alltrade*, 946 F.2d at

17    628; *see also Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D.

18    Cal. 1998) ("even if the first-to-file rule is found to be applicable in a given case, the court may still

19    decide to dispense with the rule for equitable reasons").

20          While Yellowpages.com is currently the only defendant in the *Kowalski* action and this

21    action, AT&T, the parent company of Yellowpages.com, is named as a defendant in *Prime Equity*,

22    which has been consolidated with this action.   AT&T, having successfully taken the position that

23

24    ───────────────────
       [5]     Defendant's citation to *District Council 37 Health & Sec. Plan v. McKesson Corp.*, 2006 WL
25    1305235, at *1 (N.D. Cal. May 11, 2006) and *Peak v. Green Tree Financial Servicing Corp.*, 2000
       WL 973685, at *2 (N.D. Cal. July 7, 2000) is misplaced as those courts specifically found that the
26    proposed classes were "defined" "identically." Likewise, *Antonaccio v. Board of Educ. of Arlington*
       *Central Sch. Dist.*, 281 F. Supp. 2d 710, 723-724 (S.D.N.Y. 2003) is inapposite because Plaintiffs
27    here would not be bound by a decision in the *Kowalski* action on the claim under the NJCFA (nor
       would a ruling on the NJCFA claims in *Kowalski* bind the Plaintiffs here in their CBPC claims).

28

1    there is no jurisdiction over it in New Jersey, cannot now be a defendant in that district. Thus, any

2    consolidation of *Herman* and *Kowalski* in New Jersey would have to exclude the related case of

3    *Prime Equity*.

4         It would defeat Defendant's argument of judicial efficiency and, indeed, would be illogical,

5    to transfer *Herman* without also transferring *Prime Equity*.  However, the *Prime Equity* action

6    cannot be transferred to the District of New Jersey.[6]  Thus, *Herman* and *Prime Equity* action should

7    remain here in California**.**

8         "A court may also relax the first-to-file rule if 'the balance of convenience weighs in favor of

9    the later-filed action.'"  *Guthy-Renker*, 179 F.R.D. at 270 (quoting *Ward v. Follett Corp.*, 158 F.R.D.

10   645, 648 (N.D. Cal. 1994)).  This putative nationwide class action (and, presumably, *Prime Equity* as

11   well) were filed in California as Defendant's headquarters and principal place of business are located

12   in this state.  Therefore, much of the wrongful conduct complained of in this action emanated from

13   California.  Plaintiffs Cynthia Gibson and Lisa Feeley also both reside in California.  As two of the

14   named Plaintiffs, as well as Defendant, have strong ties to this state, California is the logical and

15   most convenient place for a nationwide class action.  Defendant's allegations of forum shopping are

16   of no avail.[7]

17        Defendant's contention that class members do not have the right to opt out of these actions is

18   not only irrelevant but substantially incorrect.   First, Defendant's insistence to the contrary

19   notwithstanding, Plaintiffs have not asserted any class under Fed. R. Civ. P. 23(b)(1). Defendant is

20   correct that Plaintiffs have pled a class under Fed. R. Civ. P. 23(b)(2) by seeking injunctive relief.

21   While, Plaintiffs agree that a class member cannot seek to be excluded from the purview of any

22   order enjoining Defendant's wrongful misconduct (assuming for some irrational reason s/he would

23   want to do so), Defendant's argument that this somehow supports this Court's transferring this case

24   ────────────────────────

25   [6]    As will be shown *infra*, there is no basis for transferring this action to the Southern District of
26   New York.

27   [7]    Tellingly for Defendant's inconvenience argument, it has made no attempt to transfer
     *Kowalski* to this judicial district, a district which has jurisdiction over both it and AT&T.

28

1    to the District of New Jersey or the Southern District of New York, where the class member also

2    would have no right to opt out, makes no sense.  In any event Plaintiffs also seek a class for damages

3    under Fed. R. Civ. P. 23(b)(3) which does permit class members to opt out.  (See CAC, ¶¶142-144).

### B.    Defendant Has Not Met the Heavy Burden Necessary for a Transfer Under 28 U.S.C. §1404(a)

Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  It is settled law that a defendant moving under Section 1404(a) bears a heavy burden of proof to justify the necessity of a transfer.  *See, e.g.*, *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d. 1113, 1119 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (2000); *E & J Gallo Winery v. F & P S.p.A*, 899 F. Supp. 465, 466 (E.D. Cal. 1994); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555 (N.D. Cal. 1988) ("The plaintiff's choice of forum should not be easily overturned").

"The burden is on the moving party to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice."  *Allstar Marketing Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009)(citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).   "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)("unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed").

In this case, Defendant cannot meet its heavy burden.  Defendant's moving papers focus almost exclusively on the fact that *Kowalski* was filed first and is pending in the District of New Jersey.[8]  However, that is but one factor in determining whether a forum is so inconvenient as to require a transfer under 28 U.S.C. §1404(a), which provides that a court may transfer an action for (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of

---

[8]    Defendant's contention that this action is "nearly identical" to the *Kowalski* action is addressed in Point I *supra*.

1    justice.  Courts within this Circuit have discussed non-exhaustive factors to be considered in this

2    calculus.  They include: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the

3    convenience of the witnesses; (4) the location of books and records/the ease of access to sources of

4    proof; (5) which forum's law applies/the state that is most familiar with the governing law; (6) the

5    interests of justice; (7) administrative considerations; (8) where the relevant agreements were

6    negotiated and executed; (9) the respective parties' contacts with the forum; (10) the contacts

7    relating to the plaintiff's cause of action in the chosen forum; (11) the differences in the costs of

8    litigation in the two fora; and (12) the availability of compulsory process to compel attendance of

9    unwilling non-party witnesses. *See Allstar Marketing*, 666 F. Supp. 2d at 1130; *Jones v. GNC*

10   *Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000)).

11           In this case, the convenience of parties and witnesses, as well as the interests of justice, all

12   favor this forum.  Defendant's headquarters and principal place of business is located in California;

13   much of the wrongful conduct complained of in this action emanated from, and was orchestrated in

14   California; California's statutory and common law will apply to this case; and plaintiffs Cynthia

15   Gibson and Lisa Feeley also both reside in California.  Thus, it cannot be said that California is an

16   inconvenient forum for this nationwide class action. True, *Kowalski* was filed first, but for the

17   reasons stated, that cannot prevail as the sole basis for asserting that the District of New Jersey is the

18   most convenient forum much less meeting the actual standard:  that California is an inconvenient

19   forum (and certainly it would not justify moving any case to the Southern District of New York).

20           The cases cited by Defendant are not to the contrary.  In *Jolly v. Purdue Pharma L.P.*, 2005

21   WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005), the court transferred the action to New York because

22   the defendant corporation was headquartered there,  the acts complained of occurred there, the

23   majority of witnesses and evidence were located there and 66 other cases were pending against the

24   defendant corporation in that forum.  Additionally and significantly, the plaintiff did "not oppose the

25   transfer." *Jolly*, 2005 WL 2439197, at *2-3.

26           In *Viper Networks, Inc. v. Rates Techn., Inc.*, 2009 WL 4261167, at *2 (S.D. Cal. Nov. 23,

27   2009), the plaintiff was a Nevada corporation with Michigan as its principal place of business, and

28   the defendant was a Delaware corporation with its principal place of business in New York.

1   Therefore, litigation in "California would not be more convenient for either party." *Viper Networks*,

2   2009 WL 4261167, at *3.  As defendant's documents, files and the majority of witnesses were

3   located at its headquarters in New York, the court granted the motion to transfer the litigation there.

4   *Id.*

5          The court in *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) focused

6   on the fact that the main defendant (Applebee's) was headquartered, and the majority of the

7   decisions at issue were made at that headquarters, in Kansas.  Additionally, none of the remaining

8   defendant corporations in *Jaramillo* were headquartered in Illinois, where the plaintiff filed suit.

9   *Jaramillo*, 664 F. Supp. 2d at 914.

10         *Byerson v. Equifax Info. Serv., LLC*, 467 F. Supp. 2d 627 (E.D. Va. 2006) counseled

11   following precisely the same path advocated by Plaintiffs here.  The court acknowledged that the

12   decision of whether to transfer "'necessarily must turn on the particular facts of each case.'" 467 F.

13   Supp. 2d at 632 (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d

14   §3847 at 370).  Ultimately, "'the trial court must consider all relevant factors to determine whether

15   or not on balance the litigation would more conveniently proceed and the interests of justice be

16   better served by transfer to a different forum.'" *Id.*

17         The non-exclusive relevant factors a court should consider are divided into the so-called

18   "private factors" and "public factors."  The private factors, which relate to the parties themselves,

19   include "ease of access to sources of proof, plaintiff's choice of forum, relative convenience to

20   parties, and relative convenience to witnesses." *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d

21   810, 820 (N.D. Cal. 2008)(citing *Decker Coal*, at 805 F.2d at 843).  The public factors, which relate

22   to the interest of the general public, include "degrees of court congestion, local interest in deciding

23   local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with

24   jury duty." *Id.*

25         As discussed above, the relevant private factors weigh heavily in favor of keeping this action

26   in California.  Plaintiffs and Defendants all have meaningful contacts with California, and AT&T

27   has successfully maintained it cannot be sued in New Jersey for this claim which has a strong factual

28   and legal nexus with this state.        Defendant argues that because Plaintiffs purport to represent a

1   nationwide class, their choice of forum should be accorded less deference.  The law is to the

2   contrary.  As the court in *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1363 (N.D. Cal.

3   2007) observed, "[n]o class has yet been certified, so these are currently the only plaintiffs."

4   "Indeed, even if a nationwide class were certified the named plaintiffs would still bear a fiduciary

5   responsibility to lead the class." *Van Slyke*, 503 F. Supp. 2d at 1363.  The *Van Slyke* court concluded

6   that this factor cut against transferring the action.  *Id.*  The same is true here.

7          Fundamentally, Defendant's argument for transfer under §1404(a) rises or falls on the

8   enforceability of the New York forum selection clause contained in the Terms and Conditions.

9   While a forum selection clause may be a significant factor in the 1404(a) analysis, it "is not

10  dispositive."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000) (citing *Stewart v.*

11  *Org. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  In the case at bar, the forum selection clause is

12  entitled to no weight.

13         Essential to the enforcement of any forum selection clause is the requirement that the party

14  knowingly has agreed to it.  As demonstrated above, neither the Plaintiffs nor any of the members of

15  the class did so as Defendant fraudulently withheld from them the very existence of this term by

16  withholding the Terms and Conditions within which it is contained.  It cannot be said that Plaintiffs

17  voluntarily agreed to the forum selection clause where they were completely unaware of it.  This

18  point was made repeatedly by the United States Supreme Court in *Carnival Cruise Lines, Inc. v.*

19  *Shute*, where the Court in upholding a forum selection clause felt it necessary to express, on at least

20  three occasions, that the plaintiffs there conceded they were aware of the clause at the time they

21  entered into the agreements.  499 U.S. 585, 590, 595 (1991) (Plaintiffs "have conceded that they

22  were given notice of the forum provision and, therefore, presumably retained the option of rejecting

23  the contract with impunity").

24         Cases are legion that the validity of a forum selection clause in a contract of adhesion, like

25  Defendant's,[9] depends on whether the existence of the clause was reasonably communicated to the

26  _____

27  [9]    A "contract of adhesion" is defined as "a standardized contract, which, imposed and
28  drafted by the party of superior bargaining strength, relegates to the subscribing party only the

1   plaintiff.  *See Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir. 1987); *Effron v. Sun*

2   *Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995); *Carnival Cruise Lines*, 499 U.S. at 595; *O'Brien v.*

3   *Okemo Mountain, Inc.*, 17 F. Supp. 2d 98 (D. Conn. 1998) (finding insufficient notice where the

4   clause was printed in very small typeface on the back of the lift ticket that was affixed to plaintiff's

5   jacket).  Here, Plaintiffs received no notice of the forum selection clause contained in the Terms and

6   Conditions which they were not shown until after they had been deceived into providing their assent

7   to the order form.

8          Thus, where the contract in question was truncated so as to exclude the clause, a forum

9   selection clause will not be enforced.  *Epps v. 1.I.L, Inc.*, 2007 WL 4463588, at *4-5 (E.D. Pa. Dec.

10  19, 2007).   Courts also have found "coercion in the inclusion" of a clause (in that case one for

11  arbitration) where the initial agreement did not contain the provision but, rather, it was added in a

12  later document.  *Bhari Information Tech. Sys., Ltd. v. Allied Boston Bank Inc.*, 2005 WL 3481473,

13  *3 (N.D. Cal. Dec. 20, 2005); *cf. Hua v. MEMC Elec. Materials, Inc.*, 2009 WL 1363545, at *4, *6

14  (N.D. Cal. May 14, 2009)(finding in a case decided under the Uniform Commercial Code that

15  defendant's terms and conditions which were not delivered to the plaintiff at the time of contracting

16  were not part of the contract between the parties); *Chateau Des Charmes Wines Ltd. v. Sabate USA*

17  *Inc.*, 328 F.3d 528, 531 (9th Cir. 2003)(finding in a case decided under the Convention on Contracts

18  for the International Sale of Goods that "the forum selection clauses were not part of any agreement

19  between the parties" where the clause was contained in invoices submitted after the parties'

20  agreement).  That is precisely the case here where the order form shown and agreed to by Plaintiffs

21  was abbreviated and contained no reference to the forum selection clause in the Terms and

22  Conditions.

23         In order for a court to find sufficient notice, a plaintiff must have had the "opportunity to read

24  a clearly identified and intelligible forum selection before accepting the contract."  *Sarmiento v.*

25  _____

26  opportunity to adhere to the contract or reject it."  *American Bankers Mortg. Corp. v. Federal*
    *Home Loan Mortg. Corp.*, 75 F.3d 1401, 1412 (9th Cir.  1996); *see also Shroyer v. New Cingular*
27  *Wireless Services, Inc.*, 498 F.3d 976, 982-983 (9th Cir. 2007) (a contract of adhesion is
    "imposed upon the subscribing party without an opportunity to negotiate the terms").  All of
28  those factors are present here.

1    *BMG Entertainment*, 326 F. Supp. 2d 1108, 1110 (C.D. Cal. 2003).  Defendant's citation to *Cascade*

2    *Promotion Corp. v. AMA Sys., LLC*, 2007 WL 1574544, at *3 (N.D. Cal. May 30, 2007) is entirely

3    inapposite, as the court in *Cascade* found that the plaintiff failed "to show that did not have the

4    opportunity to read the forum selection clause before accepting the contract."

5           Here, Defendant concedes that Plaintiffs were not given the forum selection clause contained

6    in the Terms and Conditions until after they had committed to the agreement.  It was not until after

7    Dr. Herman "assented to the contract by 'sign[ing] an electronic instrument," that Defendant

8    provided her with a copy of the Terms and Conditions.  (Defendant's Memorandum of Law at 6).

9    Similarly, Ms. Feeley did not receive the Terms and Conditions until "shortly []after" she

10   "evidenced her assent" by "signing" the order.  *Id.*  Ms. Gibson "verbally 'agreed to advertise with'

11   Yellowpages.com" over the telephone, however, Defendant did not send her the "complete contract

12   (including the Terms and Conditions)" until "shortly thereafter."  (Defendant's Memorandum of

13   Law at 5).  The same was true for Mr. Ordway who agreed to make the purchase over the telephone.

14   "Shortly after Mr. Ordway agreed to advertise with Yellowpages.com, a complete contract

15   (including the Terms and Conditions" was sent to his home."  (Defendant's Memorandum of Law at

16   7).

17          The law is settled that where the evidence demonstrates that a forum selection agreement is

18   affected by fraud or undue influence, a court should refuse to enforce its provisions.  Here, each and

19   every clause in the Terms and Conditions, including the forum selection provision, was withheld

20   from Plaintiffs as a result of Defendant's fraud.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519

21   n. 14 (1974)(a clause will be unenforceable if its inclusion was the product of fraud).

22          Defendant's citation to *Rowsby v. Gulf Stream Coach, Inc.*, 2009 WL 1154130 (C.D. Cal.

23   Feb. 9, 2009) is unavailing.  The court in *Rowsby* opined that the plaintiff's claim seeking to enforce

24   the warranty agreement was evidence that he accepted the terms of the agreement.  *Rowsby*, 2009

25   WL 1154130, at *2.  Here, Plaintiffs filed tort claims under statutes enacted by the California

26   legislature to provide recourse for consumers victimized by fraudulent business practices – including

27   the failure to provide the relevant terms and conditions.  Plaintiffs are not seeking to enforce the

28   Terms and Conditions but, rather, assert that they had no notice of the Terms and Conditions before

1   being bound by Defendant.  Indeed, Plaintiffs argue that there is no contract involving those Terms
2   and Conditions.

3          A forum selection clause will apply to tort claims only when resolution of the claims requires
4   interpretation of the contract.  *See, e.g.*, *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509,
5   514 (9th Cir. 1988).  Therefore, even assuming *arguendo* that the forum selection clause contained
6   in the Terms and Conditions was enforceable, Plaintiffs' tort claims fall outside the scope of the
7   Terms and Conditions and order form.  *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 391 (2d Cir.
8   2007)(holding that forum selection clause did not govern plaintiff's statutory or unfair competition
9   claims because plaintiff asserted no rights or duties under the contract); *Attachmate Corp. v. Public
10  Health Trust*, 686 F. Supp. 2d 1140, 1150 (W.D. Wash. 2010)(refusing to enforce clause where
11  defendant failed to show that the lawsuit involved the terms of performance of the purchase orders);
12  *Accentra, Inc. v. Staples, Inc.*, 2008 WL 74000627, at *2-4 (C.D. Cal. Feb. 27, 2008)(rejecting
13  forum selection clause where plaintiffs' patent, trademark and unfair competition claims did not
14  require interpretation of the agreement), *reconsideration denied*, 2008 WL 7400628 (C.D. Cal. Apr.
15  23, 2008); *Gootnick v. Lighter*, 2005 WL 3079000, at *7 (N.D. Cal. Nov. 16, 2005)(denying motion
16  to transfer venue based on forum selection clause in promissory note because it "is unlikely that
17  many legal issues in the claims asserted here will turn on legal interpretation of the note itself").

18         The court in *Accentra* stated, "Insofar as Plaintiffs refer to the [manufacturing agreement] in
19  the [first amended complaint], they apparently do so to provide background explaining the then-
20  existing business relationships of the parties."  2008 WL 74000627, at *4.  The same is true here
21  where Plaintiffs refer to, and attach, the Terms and Conditions solely to show the breadth of the
22  provisions that were withheld from the class members and to demonstrate that they should not be
23  bound by those Terms and Conditions.

24         That Defendant seeks to justify its choice of forum by citing *Carnival Cruise Lines* is
25  remarkable on several levels including of course its stark admonition that a defendant must
26  demonstrate that a plaintiff was made aware of a forum selection clause before the defendant can
27  seek to enforce it.  499 U.S. at 590, 595.  In fact, *Carnival Cruise Lines*, is not even support for the
28  principle for which Defendant cites it.  As the Supreme Court noted, Carnival had "its principal

1    place of business in Florida, and many of its cruises depart from and return to Florida ports."  499

2    U.S. at 595.  Conversely, here Defendant has its principal place of business in California.

3            Defendant's reliance on the New York choice of law clause provision is unavailing for the

4    same reason as the forum selection clause: it also is contained in the Terms and Conditions (See

5    CAC, Exhibit "B").  Just as Plaintiffs received no notice of the forum selection clause, they received

6    no notice of the choice of laws provision contained in the same document.

7            The relevant public factors also support keeping this action here.  Defendant, which is

8    headquartered in California, will be judged by a jury comprised of California residents.  *See*

9    *Brackett*, 619 F. Supp. 2d at 821 (citing *Decker Coal*, 805 F.2d at 843).  Defendant's conduct

10   emanated from California and affected two California plaintiffs and, undoubtedly, thousands of

11   California residents.  Additionally, courts have recognized that the delay resulting from a transfer,

12   even one made in a young case, "can be significant."  *Brackett*, 619 F. Supp. 2d at 821.  Based on the

13   relevant factors and the convenience of the parties, both this action and *Prime Equity* should remain

14   in this Court.

15   **IV.    CONCLUSION**

16           For all of the above reasons, Plaintiffs respectfully ask this Court to deny Defendant's motion

17   in its entirety.

18   DATED:  July 6, 2010                          Respectfully submitted,

19                                                 COHN LIFLAND PEARLMAN
                                                     HERRMANN & KNOPF LLP
20                                                 PETER S. PEARLMAN

21

22                                                      s/ PETER S. PEARLMAN
                                                      PETER S. PEARLMAN
23

24                                                 Park 80 Plaza West-One
                                                   Saddle Brook, NJ  07663
25                                                 Telephone:  201/845-9600
                                                   201/845-9423 (fax)

26

27

28

1

2    ROBBINS GELLER RUDMAN
        & DOWD LLP
3    FRANK J. JANECEK, JR.
     CHRISTOPHER COLLINS
     655 West Broadway, Suite 1900
4    San Diego, CA  92101
     Telephone:  619/231-1058
5    619/231-7423 (fax)

6    LYNCH LAW FIRM, P.C.
     PAUL I. PERKINS
7    45 Eisenhower Drive, Suite 300
     Paramus, NJ  07652
8    Telephone:  800/656-9529
     888/271-9726 (fax)
9
     ZIMMERMAN REED, P.L.L.P.
10   J. GORDON RUDD, JR.
     DAVID M. CIALKOWSKI
11   651 Nicollet Mall, Suite 501
     Minneapolis, MN  55402
12   Telephone:  612/341-0400
     612/341-0844 (fax)
13
     MILBERG LLP
14   JEFF S. WESTERMAN
     SABRINA S. KIM
15   300 South Grand Avenue, Suite 3900
     Los Angeles, CA  90071
16   Telephone:  213/617-1200
     213/617-1975 (fax)
17
     MILBERG LLP
18   PETER SAFIRSTEIN
     ANDREI RADO
19   One Pennsylvania Plaza
     New York, NY  10119
20   Telephone:  212/594-5300
     212/868-1229 (fax)
21
     Attorneys for Plaintiffs
22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2
      I hereby certify that on July 6, 2010, I electronically filed the foregoing with the Clerk of the

3
Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

4
denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the

5
foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6
indicated on the attached Manual Notice List.

7
      I certify under penalty of perjury under the laws of the United States of America that the

8
foregoing is true and correct.  Executed on July 6, 2010.

9

10
                                  <u>s/ PETER S. PEARLMAN</u>
                                    PETER S. PEARLMAN

11
                                    ROBBINS GELLER RUDMAN
                                          & DOWD LLP

12
                                    655 West Broadway, Suite 1900
                                    San Diego, CA  92101-3301

13
                                    Telephone:  619/231-1058
                                    619/231-7423 (fax)

14

15
                                    E-mail: psp@njlawfirm.com

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:10-cv-00195-JAH -AJB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James F. Bogan , III**
  jbogan@kilpatrickstockton.com

- **Christopher Collins**
  Chrisc@rgrdlaw.com,dianah@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **C. Allen Garrett**
  agarrett@kilpatrickstockton.com

- **Frank J Janecek , JR**
  frankj@rgrdlaw.com,kathryns@rgrdlaw.com,e_file_sd@rgrdlaw.com,JWolsborn@rgrdlaw.com

- **Sabrina S. Kim**
  skim@milberg.com,mbowman@milberg.com,cchaffins@milberg.com

- **Peter S. Pearlman**
  PSP@njlawfirm.com

- **Paul Ivan Perkins**
  pperkins@lynchlawyers.com

- **Richard Max Valdez**
  rvaldez@sllbv.com,vmejias@sllbv.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)