1  James G. Sandler, Bar No. 067407
   Richard M. Valdez, Bar No. 156957
2  **SANDLER, LASRY, LAUBE, BYER & VALDEZ LLP**
   402 West Broadway, Suite 1700
3  San Diego, CA 92101-3542
   Telephone:  (619) 235-5655
4  Facsimile:  (619) 235-5648
   Email:  jsandler@sllbv.com
5  Email:  rvaldez@sllbv.com

6  James F. Bogan, III (admitted *pro hac vice*)
   C. Allen Garrett, Jr. (admitted *pro hac vice*)
7  **KILPATRICK STOCKTON LLP**
   Suite 2800, 1100 Peachtree Street
8  Atlanta, GA 30309-4528
   Telephone:  (404) 815-6467
9  Facsimile:  (404) 541-3133
   Email:  JBogan@KilpatrickStockton.com
10 Email:  AGarrett@KilpatrickStockton.com

11 Attorneys for Defendants YellowPages.com, LLC and AT&T Inc.

12              **UNITED STATES DISTRICT COURT**

13            **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 14  AMANDA HERMAN d/b/a CREATING<br>     WELLNESS CHIROPRACTIC CENTER, et al.,<br>15  Individually and on Behalf of All Others Similarly<br>     Situated,<br>16<br>          Plaintiffs/Counter-Defendants,<br>17       v.<br>18  YELLOWPAGES.COM, LLC,<br>19          Defendant/Counter-Claimant. | Consolidated Case No.<br>10-CV-0195-JAH(AJB)<br><br>[This filing relates to Case No.<br>10-CV-0798JAH(AJB)]<br><br>CLASS ACTION<br><br><br>[Complaint Filed January 26, 2010] |
| 20  PRIME EQUITY HOLDINGS, INC., Individually<br>     and on Behalf of All Others Similarly Situated,<br>21<br>          Plaintiff,<br>22       v.<br>23<br>     YELLOWPAGES.COM, LLC and AT&T INC.,<br>24<br>          Defendants.<br>25<br>26<br>27<br>28 | Case No. 10-CV-0798JAH(AJB)<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>DEFENDANT<br>YELLOWPAGES.COM, LLC'S<br>MOTION TO DISMISS OR, IN THE<br>ALTERNATIVE, TO TRANSFER**<br><br>DATE:  August 30, 2010<br>TIME:  2:30 p.m.<br>CTRM: 11<br><br>[Complaint Filed April 15, 2010] |

X:\Clients\1912\0002\LIT\00031439.DOC

1        Pursuant to Fed. R. Civ. P. 12(b)(3), Defendant YellowPages.com, LLC

2  ("YellowPages.com") moves to dismiss this putative class action filed by Plaintiff Prime Equity

3  Holdings, Inc. ("Prime Equity"), based on the mandatory forum selection clause contained in the

4  parties' advertising contract.  That forum selection clause provides that "any action or proceeding

5  brought ... under or relating to" the parties' advertising contracts "shall be brought in a state or

6  federal court located in the City of New York, State of New York," and further provides that

7  Plaintiff "irrevocably submit[s] to the personal jurisdiction of and irrevocably consent[s] to venue in

8  such courts for purposes of any such action or proceeding."

9        In the alternative, YellowPages.com moves to transfer this action, pursuant to both the first-

10  to-file rule and 28 U.S.C. § 1404(a), to the court presiding over *Kowalski, et al. v. YellowPages.com,*

11  *LLC*, No. 09-2382 (PGS) – (ES) (D.N.J.) ("*Kowalski*"), a prior-filed, overlapping class action

12  involving similar factual allegations and substantially similar causes of action.  YellowPages.com

13  sought similar relief in *Herman, et al. v. YellowPages.com, LLC*, Case No. 10CV0195JAH(AJB)

14  (S.D. Cal.) ("*Herman*"), with which this case recently was consolidated.  Given the overlapping

15  nature of these motions, and to avoid submitting duplicate motions, YellowPages.com incorporates

16  by reference the *Herman* briefing, as more fully addressed below.  *See id.* [*Herman* Dkt Nos. 24, 25

17  & 35].

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### I.    Procedural History of This Action

20        On April 15, 2010, Plaintiff Prime Equity filed this putative nationwide class action against

21  YellowPages.com and AT&T Inc.  Prime Equity is a mortgage broker located in Boise, Idaho who

22  seeks to represent "[a]ll persons in the United States who purchased the YP Clicks! Program service

23  from January 26, 2006 through the final disposition of this and any and all related actions." *See*

24  Compl. ¶ 26.  The YPClicks! program is a central component of both the *Kowalski* and *Herman*

25  allegations. *See Kowalski* Compl. ¶¶ 6, 27, 43-46; *Herman* Compl. ¶¶ 6, 26, 42-45.  As with the

26  *Herman* plaintiffs, Plaintiff here brings claims for violations of California Business and Professions

27  Code § 17500, *et seq.* (Count III) and California Business and Professions Code § 17200, *et seq.*

28

1  (Count IV), as well as claims for breach of contract (Count I) and breach of the implied covenant of

2  good faith and fair dealing (Count II).

3        Prime Equity is represented by attorneys located in the New York and Los Angeles offices of

4  Milberg LLP.  Recognizing the close relationship between *Herman* and this action (and, therefore,

5  the *Kowalski* action as well), Plaintiff's counsel filed a notice of related action, resulting in the

6  transfer of the action to this Court pursuant to Local Rule 40.1's "Low Number" rule.  *See Prime*

7  *Equity* Dkt. Nos. 6, 7.  The cases subsequently have been consolidated pursuant to a joint motion of

8  the parties. *See Prime Equity* Dkt. No. 13; *Herman* Dkt. No. 30.

9  II.    **Statement of Facts**

10        A.    **Plaintiff's Advertising Contract with YellowPages.com**

11        On April 19, 2007, "Prime Equity purchased [YellowPages.com's] YPClicks! program with a

12  guaranteed 1,080 clicks for a one-year term … at a monthly rate of $381."[1]  Compl. ¶ 12.  Consistent

13  with company policy and practice, during the sales meeting with Prime Equity, YellowPages.com's

14  salesperson would have explained that additional terms and conditions applied and would have

15  provided a hard copy of the Terms and Conditions for the customer to review. *See* Declaration of

16  Barry Adams ("Adams Decl.") ¶ 3 (attached hereto as Exhibit A) (Exhibit A-1, A-2).  Both a hard

17  copy of the signed Advertising Order Form and the Terms and Conditions would have been left with

18  the advertiser. *Id.*

19        Paragraph 16 of the Terms and Conditions provided to Prime Equity provides as follows:

20        This Agreement shall be governed by and construed and enforced in
          accordance with the laws of the State of New York applicable to contracts
21        entered into and performed in New York by residents thereof. *Any action or
          proceeding brought by you or us relating to this Agreement shall be brought*
22        *in a state or federal court located in the City of New York, State of New*
          *York,* and you hereby irrevocably submit to the personal jurisdiction of and
23        irrevocably consent to venue in such courts for purposes of any such action or
          proceeding.

24

25  Adams Decl. ¶ 6 & Ex. 1 ¶ 16 thereto (emphasis added) (Exhibit A-2, A-8).

26

27  _____

28  [1] Prime Equity also purchased additional products that are not at issue here.

1   In accordance with the contract's terms, Prime Equity made three monthly payments of $381.

2   Compl. ¶ 12. According to Prime Equity, it then "realized that it was receiving significantly less

3   than 90 clicks each month." *Id.* After contacting YellowPages.com about this alleged problem,

4   Prime Equity submitted a complaint to the California Better Business Bureau ("BBB"). *See*

5   Declaration of Melinda Goldstein ("Goldstein Decl.") ¶ 3 (attached hereto as Exhibit B) (Exhibit B-

6   9, B-10). Dean Tucker, co-owner and operator of Prime Equity, complained that although Prime

7   Equity had signed a 12-month contract, he wanted the contract terminated early, because Prime

8   Equity allegedly was not receiving the number of clicks it was expecting under the contract. *Id.*

9   Ms. Goldstein responded by letter to the BBB on or about September 19, 2007. Goldstein

10  Decl. ¶ 4 (Exhibit B-10). In her letter, Ms. Goldstein explained that Prime Equity's advertising

11  contract had a term of 12 months and that the remaining monthly payments would be due even if

12  Prime Equity canceled. *Id.* ¶¶ 4-5 (Exhibit B-10) & Exs. 1-2 (Exhibit B-11 thru B-18). Attached to

13  Ms. Goldstein's letter was a copy of Prime Equity's signed Advertising Order Page, together with the

14  Terms and Conditions. *Id.* Exs. 1-2 (Exhibit B-11 thru B-18).

15  Mr. Tucker's reply on behalf of Prime Equity acknowledged "we signed a 12 month contract

16  – we know that. We understand that." *Id.* ¶ 6 (Exhibit B-10) and Ex. 3 thereto (Exhibit B-19 thru B-

17  22). The remainder of Mr. Tucker's reply focused on his substantive complaints with the advertising

18  product Prime Equity had purchased, and raised no complaint regarding the forum selection clause

19  or any of the other Terms and Conditions attached to Prime Equity's advertising contract. *See*

20  *generally id.*

21          B.      **Plaintiff's Complaint Alleges Breaches of the Advertising Contracts Containing
                    the New York Forum Selection Clause**

22

23  In its Complaint, Prime Equity challenges various aspects of YellowPages.com's

24  performance of its duties under the parties' advertising contracts. *See* Compl. ¶¶ 1-9, 16-25. Based

25  on these allegations, Prime Equity asserts four claims: (1) breach of contract; (2) breach of the

26  implied covenant of good faith and fair dealing; (3) violations of California Business and Professions

27  Code § 17500 *et seq.*; and (4) violations of California Business and Professions Code § 17200 *et seq.*

28  ///

1    With respect to the Terms and Conditions, Prime Equity alleges in conclusory fashion that

2  the parties' "contract is confusing, not in conformance with the representations made by Defendants'

3  salespeople, and uniformly withheld from Defendants' customers until *after* they have 'agreed' to the

4  materially different terms negotiated by Defendants' salespeople." Compl. ¶ 21 (emphasis in

5  original). No details are provided as to why the parties' contract is "confusing," and no specificity is

6  provided as to how the terms of the parties' written contract allegedly are "materially different" from

7  the terms purportedly "negotiated" by YellowPages.com's sales personnel.

8                   **ARGUMENT AND CITATIONS TO AUTHORITY**

9  **I.      This Case Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3)**

10    "A motion to dismiss under Rule 12(b)(3) is the proper means to enforce a contractual forum-

11  selection clause." *Meier v. Midwest Recreational Clearinghouse, LLC*, No. 2:10-cv-01026-MCE-

12  GGH, 2010 WL 2738921 (E.D. Cal. July 12, 2010) (citing *Argueto v. Banco Mexicano, S.A.*, 87 F.3d

13  320, 324 (9th Cir. 1996)). Under such a motion, "the pleadings need not be accepted as true." *Id.*

14    Federal law governs the validity of a forum selection clause. *Manetti-Farrow, Inc. v. Gucci*

15  *Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). In *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92

16  (1972), the Supreme Court held forum selection clauses are presumptively valid and should be

17  honored "absent some compelling and countervailing reason." *Id.* at 12. *See also Besag v. Custom*

18  *Decorators, Inc.*, No. CV08-05463 JSW, 2009 WL 330934, *2 (N.D. Cal. Feb. 10, 2009) ("forum

19  selection clauses are presumptively valid"). The party challenging the clause bears a "heavy burden

20  of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the

21  clause was invalid for such reasons as fraud or over-reaching." *Id.* at 15.

22    The Ninth Circuit recognizes three factors as relevant to determining whether enforcement of

23  a forum selection clause would be unreasonable:

24          (1) if the inclusion of the clause in the agreement was the product of fraud or
            overreaching; (2) if the party wishing to repudiate the clause would effectively
25          be deprived of his day in court were the clause enforced; and (3) if
            enforcement would contravene a strong public policy of the forum which the
26          suit is brought.

27

28

1   *Billing v. CSA-Credit Solutions of Am., Inc.*, No. 10-cv-0108 BEN (NLS), 2010 WL 2542275 (S.D.

2   Cal. June 22, 2010) (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)).

3   None of these exceptions applies in the present circumstances.

4           A.      **The Forum Selection Clause Was Not the Product of Fraud or Overreaching**

5           To avoid the forum selection clause based upon fraud or overreaching, it is not enough to

6   allege that the contract as a whole was procured by fraud.  Rather, the party "must show that 'the

7   *inclusion of that clause in the contract* was the product of fraud or coercion.'"  *Richards v. Lloyd's*

8   *of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (quoting *Scherk v. Alberto-Culber Co.*, 417 U.S.

9   506, 519 n. 14 (1974)) (emphasis in original); *see also Mahoney v. Depuy Orthopaedics, Inc.*, No.

10  CIV F 07-1321 AWI SMS, 2007 WL 3341389, *7 (E.D. Cal. Nov. 8, 2007) ("A party seeking to

11  avoid enforcement of the forum selection clause … must show that the inclusion of the clause itself

12  into the agreement was improper; it is insufficient to allege that the agreement as a whole was

13  improperly procured.").  Absent "particularized allegations about the purported fraudulent inclusion

14  of the forum selection clause itself," the forum selection clause must be upheld.  *Samain v. Advent*

15  *Prod. Dev.*, No. EDCV 08-980-VAP (PLAx), 2008 WL 4501497, *2 (C.D. Cal. Sept. 30, 2008).

16          Here, although Prime Equity makes various allegations regarding the allegedly false and

17  misleading statements made by YellowPages.com's salespeople concerning the functionality of

18  YPClicks!, the Complaint does not contain any allegation that the forum selection clause itself was

19  procured by reason of fraud or overreaching.  Prime Equity's conclusory allegation that the Terms

20  and Conditions were "withheld" from customers until after the initial sales transaction is insufficient,

21  particularly given that terms and conditions frequently are not provided until after a sale.[2]

22          As shown by the evidence submitted by YellowPages.com, Prime Equity would have been

23  made aware of the Terms and Conditions prior to completing the sale, and would have received a

24  copy of the parties' complete advertising contract (including the Terms and Conditions) at the time

25  _____

26  [2] *See Cascasde Promotion Corp. v. AMA Sys., LLC*, No. C 07-1513 CW, 2007 WL 1574544 (N.D. Cal. May 30, 2007)
    ("Plaintiff knew that, by signing the contract, it would be bound by undisclosed terms and conditions, yet it provides no

27  evidence that it asked to see those conditions before signing the contract …."); *cf. Batchelder v. Kawamoto*, 147 F. 3d
    915, 919 (9th Cir. 1998) (equating choice-of-law clause to forum selection clause and enforcing provision

28  notwithstanding plaintiff's contention that he "was never given a copy of and never consented to" the terms and
    conditions containing the clause).

1  of contracting. Adams Decl. ¶ 3 (Exhibit A-1, A-2). Plaintiff offers absolutely no allegations (much

2  less evidence) it "asked to see those conditions before signing the contract." *Cascade*, 2007 WL

3  1574544, at *3. For several months thereafter, Prime Equity made its monthly payments without

4  ever challenging the clause. Compl. ¶ 12. Even when Prime Equity filed a formal complaint with

5  the Better Business Bureau regarding the performance of its advertising product, it did not challenge

6  the forum selection clause, instead acknowledging – after YellowPages.com submitted another copy

7  of the Terms and Conditions – it was bound by a twelve-month contractual term. Goldstein Decl.

8  ¶¶ 3-6 (Exhibit B-9, B-10) & Exs. 1-3 (Exhibit B-11 thru B-22).

9      In these circumstances, Prime Equity's general claim of fraudulent inducement of the entire

10  contract is insufficient to avoid enforcement of the forum selection clause.[3] Accordingly, the clause

11  should be enforced.[4]

12      **B.      Enforcement of the Clause Will Not Foreclose Prime Equity's Day in Court**

13      For a forum selection clause to be unreasonable or unjust and therefore unenforceable, it

14  must effectively deny Plaintiff a meaningful day in court. *Argueta*, 87 F.3d at 325. There is no

15  colorable argument that dismissing this case without prejudice so that this case may be refiled in the

16  appropriate forum would deprive Prime Equity of its day in court. *See id.* (past persecution of the

17  plaintiff in Mexico and fear of future of future persecution if he returned was insufficient to render

18  unreasonable a forum selection clause designating Mexico as the forum). Moreover, Prime Equity is

19  a mortgage company based in Boise, Idaho, yet it unilaterally decided to bring suit in San Diego,

20  California, which is nearly 1,000 miles away from Boise and has no connection to the events in

21

22  [3] *See, e.g., Modius, Inc. v. Psinaptic, Inc.*, No. C 06-02074 SI, 2006 WL 1156390, *6 (N.D. Cal. May 2, 2006) (holding
evidence that claimant would not have agreed to forum selection clause but for misrepresentations concerning the subject
23  matter of the entire contract "not enough to meet the first *Bremen* exception").

24  [4] *See, e.g., Lowden v. T-Mobile USA Inc.*, No. 09-35201, 2010 WL 1841891 (9th Cir. May 10, 2010) (applying terms and
conditions on back of service agreements to affirm dismissal of breach claims); *Testa*, 2010 WL 1644883, at *7
25  (enforcing forum selection clause contained in ERISA plan documents provided to plaintiff); *Stern v. Advanta Bank
Corp.*, No. C. 09-3276 PVT, 2010 WL 1028375, *4 (N.D. Cal. Mar. 18, 2010) (enforcing forum selection clause
25  included in credit cards' terms and conditions mailed to business owner plaintiffs along with credit cards); *Craiglist, Inc.
v. Naturemarket, Inc.*, No. C 08-5065 PJH, 2010 WL 807446, *8 (N.D. Cal. Mar. 5, 2010) (finding personal jurisdiction
26  where terms of use of website included forum selection clause and terms were accepted by use of website); *Rowsby v.
Gulf Stream Coach, Inc.*, No. SA CV08-1213 DOC (FFMx), 2009 WL 1154130, *2 (C.D. Cal. Feb. 9, 2009) (attaching a
27  copy of terms and conditions containing relevant forum selection clause to motion was evidence of assent); *Molnar v. 1-
800 Flowers.com, Inc.*, No. CV-08-0542, 2008 WL 4772125, *4-5 (C.D. Cal. Sept. 29, 2008) (counterclaim for breach of
28  forum selection clause was valid where forum selection clause was found in website's terms of use).

1   dispute.  Thus, Prime Equity cannot complain about the inconvenience of re-asserting its claims in

2   the proper New York forum.  In any event, "[t]he inconvenience of traveling to a different state is

3   not enough to overcome the presumptive validity and enforcement of a forum selection clause."

4   *Billing*, 2010 WL 2542275, at *3 (citing *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,

5   741 F.2d 273, 281 (9th Cir. 1984) (travel from east coast to California is not too inconvenient)).

6              **C.      California's Public Policy Does Not Render the Clause Unenforceable**

7              In California, "strong public policy supports the enforcement of forum selection clauses."[5]

8   Thus, federal courts sitting in California routinely enforce forum selection clauses, even where

9   claims are brought under California's Unfair Competition Law and False Advertising Law.[6]  Because

10  a forum selection clause between two businesses does not implicate any California public policy, it

11  should be enforced and this action should be dismissed.[7]

12  **II.      In the Alternative, This Action Should be Transferred**

13             As noted above, YellowPages.com has moved to transfer the related *Herman* action (with

14  which this case has been consolidated) to the district court before which the prior-filed *Kowalski*

15  class action is pending.  *See Herman* Dkt. Nos. 24, 25 & 35.  Briefing on the *Herman* motion closed

16  on July 16, 2010, and the motion is scheduled for hearing on August 30, 2010.  *See id.* Dkt. No. 33.

17  Because the grounds for the motion to transfer *Herman* – the federal "first-to-file" rule, the "interest

18  of justice" prong of § 1404(a), and the forum selection clause – apply equally to this action,

19  YellowPages.com relies upon and incorporates its prior briefing in support of its motion to transfer

20  *Herman*, only briefly discussing a few additional facts specific to this case below.

21  _____

22  [5] *Bennett v. Hosting.com, Inc.*, No. C-08-3792 SC, 2008 WL 4951020, *3 (N.D. Cal. Nov. 18, 2008) (quoting *E. & J.
    Gallo Winery v. Andina Licores S.A.*, 440 F. Supp. 2d 1115, 1126 (E.D. Cal. 2006)); *see also Pac. Health Advantage v.*

23  *CAP Gemini Ernst & Young U.S. LLC*, No. C 07-1565 PJH, 2007 WL 1288385, *3 (N.D. Cal. May 2, 2007) ("[T]here
    plainly *is* a public policy that strongly favors the enforcement of forum-selection clauses.") (emphasis in original) (citing

24  *Argueta*, 87 F.3d at 325).

25  [6] *See, e.g., Stern*, 2010 WL 1028375, *5 (enforcing forum selection clause in credit card agreement as to causes of action
    brought under California Business and Professions Code §§ 17200, *et seq.* and 17500, *et seq.*); *Doe v. Network Solutions,*

26  *LLC*, No. C 07-05115 JSW, 2008 WL 191419, *7 (N.D. Cal. Jan. 22, 2008) (enforcing forum selection clause in favor of
    Virginia with respect to claim under § 17200).

27  [7] "Any notion that [New York] courts will not safeguard [Prime Equity's] rights is 'speculative' and reflects a 'provincial
    attitude' towards the [New York] courts." *Mahoney v. Depuy Orthopaedix, Inc.*, No. CIV F 07-1321 AWI SMS, 2007

28  WL 3341389, *8 (E.D. Cal. Nov. 8, 2007) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 515 (9th Cir.
    1988)).

**A.   The First-to-File Rule Applies and Transfer is Appropriate**

    **1.   The Classes Overlap**

Prime Equity purports to represent a nationwide class of all YellowPages.com advertisers who purchased the YPClicks! product.  This class includes claimants in *Kowalski*'s putative class, defined as all YellowPages.com advertisers located in New Jersey.[8]  Because both putative class actions include New Jersey advertisers who purchased YPClicks!, the risk of inconsistent rulings and judgments exists, and therefore the parties are substantially similar for purposes of the first-to-file rule. *See Herman* Dkt. No. 24, at 8-10; Dkt. No. 35, at 3-4.[9]

    **2.   The Issues are Substantially Similar**

The allegations contained in the present action and the *Kowalski* complaint both revolve around alleged false and misleading statements regarding the products and services offered by YellowPages.com.  Although *Kowalski* (like *Herman*) purports to challenge the entirety of YellowPages.com's sales process, Prime Equity focuses its complaints more narrowly on the single YPClicks! product.  Nevertheless, the *Kowalski* facts necessarily subsume the allegations here, and thus the cases are "substantially similar" for purposes of the first-to-file rule.  The *Herman* plaintiffs conceded as much,[10] and the relatedness of this action and *Herman* already has been recognized by the transfer of this case and the ensuing consolidation.  Accordingly, the "substantial similarity of issues" requirement is satisfied here. *See Herman* Dkt. No. 24, at 10-11; Dkt. No. 35, at 4.

**B.   Transfer Is Also Appropriate Pursuant to 28 U.S.C. § 1404(a)**

For the reasons set forth in YellowPages.com's motion to transfer the consolidated *Herman* case (*see Herman* Dkt. No. 24, at 11-24; Dkt. No. 35, at 5-10), this case also should be transferred to

---

[8] *See Kowalski* Am. Compl. ¶ 1 (identifying the class as "consisting of all persons or entities in the State of New Jersey that allegedly contracted with Defendant for advertising services from and after May 1, 2005") (*Herman* Dkt No. 24-4, pg. B-41).

[9] Significantly, as with counsel for the *Herman* plaintiffs, counsel for Prime Equity has appeared *pro hac vice* in the *Kowalski* action, indicating that counsel for all of the plaintiffs in the related class actions perceive efficiencies from coordinating their litigation efforts.

[10] "[W]hile certainly many of the underlying facts comprising Defendant's wrongful course of conduct are the same [in *Kowalski* and *Herman*], and discovery in both cases will overlap substantially – indeed, discovery of Defendant and third parties in *Herman* likely will subsume substantially that discovery in *Kowalski* and *Prime Equity* and such discovery certainly should be coordinated." *Herman* Opp. to Motion to Transfer, at 6. Dkt. No. 31.

1   the court presiding over the *Kowalski* action pursuant to the "interests of justice" prong of 28 U.S.C.

2   § 1404(a) and the forum selection clause.

3          With respect to the "interest of justice," it should be noted that Prime Equity is a mortgage

4   company based in Boise, Idaho that contracted with YellowPages.com *in Boise* for internet

5   advertising *in and around Boise*.  This district has no connection to the transaction in which Prime

6   Equity purchased internet advertising or to the advertising itself.  To the contrary, it appears

7   Plaintiffs filed this action here as a "follow-on" to *Herman*, which itself was filed in this Court only

8   as a result of forum-shopping by the *Herman* plaintiffs' counsel. *See Herman* Dkt. No. 24, at 1-4.

9                                    **CONCLUSION**

10         This action should be dismissed pursuant to the forum selection clause in favor of New York.

11   In the alternative, the matter should be transferred so that it can be coordinated and ultimately

12   consolidated with *Kowalski*.  Although *Kowalski* currently is pending in the District of New Jersey,

13   YellowPages.com's motion to transfer that case to the Southern District of New York is fully-briefed

14   and is scheduled to be argued on July 27, 2010, and will be decided shortly thereafter.  Therefore,

15   YellowPages.com respectfully asks that this Court wait until after the *Kowalski* court rules on the

16   pending motion and then transfer venue of this case to the forum where that action will ultimately be

17   resolved, whether that forum is the Southern District of New York or the District of New Jersey.

18   Dated:      July 20, 2010                **SANDLER, LASRY, LAUBE, BYER**
                                              **& VALDEZ LLP**
19

20

21                                           By:      _____/s/ Richard M. Valdez_____
                                                      James G. Sandler
22                                                    Richard M. Valdez

23                                                    James F. Bogan, III (*pro hac vice*)
                                                      C. Allen Garrett, Jr. (*pro hac vice*)
24                                                    KILPATRICK STOCKTON LLP
                                                      Suite 2800, 1100 Peachtree Street
25                                                    Atlanta, GA 30309-4528
                                                      Telephone:  (404) 815-6467
26                                                    Facsimile:  (404) 541-3133

27                                                    Attorneys for Defendants
                                                      YELLOWPAGES.COM, LLC and AT&T
28                                                    INC.

X:\Clients\1912\0002\LIT\00031439.DOC                9